UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL INSTITUTES OF HEALTH, et al., <br><br> Defendants. | Civil Action No. 23-0926 (SLS) |

**MOTION FOR SUMMARY JUDGMENTAND
MEMORANDUM IN SUPPORT THEREOF**

**TABLE OF CONTENTS**

Table of Contents.........................................................................................................................i

Background .............................................................................................................................. 1

Legal Standards....................................................................................................................... 2

Argument ................................................................................................................................. 4

      I.      The Statement of Work was Appropriately Redacted Under Exemption 5............ 4

            A.      The Draft Statement of Work is Predecisional. ......................................... 5

            B.      The Draft Statement of Work is Deliberative. .......................................... 6

            C.      Releasing the draft Statement of Work would cause foreseeable harm to the interests that the deliberative process privilege protects...................... 9

      II.     NIH Appropriately Withheld Information Under Exemption 6. .......................... 10

      III.    NIH Produced All Reasonably Segregable Information...................................... 14

Conclusion ............................................................................................................................ 16

Defendants the Department of Health and Human Services, along with its component, the National Institutes of Health, respectfully submit this memorandum in support of their motion for summary judgment.

## INTRODUCTION

Defendants are entitled to an order granting summary judgment in their favor on Plaintiff Informed Consent Action Network's claims under the Freedom of Information Act.  5 U.S.C. § 552.  The parties have narrowed their dispute to certain withholdings under Exemptions 5 and 6. As demonstrated below, Defendants appropriately withheld (i) a draft statement of work under the deliberative process privilege as incorporated through Exemption 5, and (ii)  the names and identifying information of NIH employees and third-party researchers as an unwarranted invasion of personal privacy under Exemption 6.  Defendants also determined that the withheld material did not include any information that could be further segregated for release without causing foreseeable harm to one or more of the interests that the FOIA exemptions protect.

## BACKGROUND

On February 10, 2022, Plaintiff Informed Consent Action Network submitted two FOIA requests to the National Institutes of Health ("NIH").  The requests each referenced an article from Yahoo News.  See Jerry Dunleavy, *NIH defends deleting Covid-19 genetic data pointing to lab leak origin*, Yahoo News, Jun. 24, 2021 (ECF No. 1-1 at 30).  The first request sought (1) a copy of "the request to remove the data in June 2020," (2) All communications regarding "the request to remove the data in June 2020," and (3) All communications regarding the removal of "the data in June 2020" as referenced in the Yahoo News Article.  First Request (ECF No. 1-1 at 10).  The second request sought "All documents concerning the NIH's 'review' of data removed from the National Center for Biotechnology Information's Sequence Read Archive data system, in light of the findings of Jesse D. Bloom, and his publication titled Recovery of deleted deep sequencing

data shed more light on the early Wuhan SARS-CoV-2 epidemic" as referenced in the same article. Second Request (ECF No. 1-1 at 18).  NIH produced sixty-two pages of records in response to these requests.  Garcia-Malene Decl. ¶ 7.  Dissatisfied with NIH's response, Plaintiff filed suit on April 4, 2023.  *See generally*, Compl.  (ECF No. 1).  After Plaintiff filed suit, the parties conferred and NIH produced 1,007 pages of responsive records over five productions.  Garcia-Malene Decl. ¶ 10.

On August 9, 2024, after NIH finished the production, Plaintiff sought a rationale for why NIH decided to withhold certain materials.  Garcia-Malene Decl. ¶ 11.  In response, NIH provided Plaintiff with a draft *Vaughn* Index and two rounds with reprocessed productions with some of the previously applied redactions removed.  *Id.* ¶¶ 12-14.  After negotiation, the parties narrowed their dispute to (i) NIH's withholdings of a Statement of Work for a Root Cause Analysis under Exemption 5, *Id.* ¶ 19, and (ii) redactions of the names and contact information of individuals who made submissions to the BioSample database and the Sequence Read Archive database and later requested withdrawal from the database, and the names and contact information of NIH employees who work on the Sequence Read Archive database under Exemption 6.  *Id.* ¶ 1.  Plaintiff is not challenging the adequacy of the search.  *Id.* ¶ 15.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon

the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (citation omitted). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (citation omitted). Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).

**ARGUMENT**

**I.**    **The Statement of Work was Appropriately Redacted Under Exemption 5.**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative process privilege.  *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008); *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).  In this case, NIH withheld portions of the Statement of Work for the Root Cause Analysis under the deliberative process privilege. Garcia-Malene Decl. ¶ 19.

The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The objective of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting *Sears*, 421 U.S. at 151). This privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news."  *Klamath*, 532 U.S. at 9; *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure"); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to

'operate in a fishbowl'") (referencing S. Rep. No. 813, at 9 (1965)).  To properly assert the deliberative process privilege under Exemption 5, an agency must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'"  *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).  Here, NIH has shown both.

### A.      The Draft Statement of Work is Predecisional.

"A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made."  *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)).  The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter."  *Sierra Club*, 141 S. Ct. at 786, 788. Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of working out its policy."  *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014).  To show that a document is predecisional, the agency need not identify a specific final decision on the subject, if one exists at all, but should explain the role the contested document played in the deliberative process.  *Access Reps. v. Dep't of Just.*, 926 F.2d 1192, 1196 (D.C. Cir. 1991); *see Sears*, 421 U.S. at 151 n.18 (noting that not all recommendations will ripen into agency decisions).

The Statement of Work is predecisional because NIH staff wrote it as part of its process for contracting for a root cause analysis.  Garcia-Malene Decl. ¶¶ 21-22.  The document is an initial draft of the statement of work that was circulated for comment by other NIH staff and, thus, it is not the final version that was released to prospective contractors.  *Id. Contra, Sierra Club*, 141 S. Ct. at 785 (finding the rationale behind the deliberative process privilege "does not apply, of

course, to documents that embody a final decision, because once a decision has been made, the deliberations are done"); *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (explaining that predecisional materials can lose status as such in certain cases where there is an express adoption).

Furthermore, in order to show documents are predecisional, "the agency need not identify a specific final agency decision; it is sufficient to establish 'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. Dep't of Just.*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980). Here, NIH explained the deliberative process involved: the draft was prepared as part of an ongoing dialogue concerning the contents of the statement of work. Garcia-Malene Decl. ¶¶ 21-22. Accordingly, because the withheld portions of the Statement of Work records reflects proposals to aid the Agency in rendering decisions, and the record was not, itself, reflective of final agency actions, the disputed record is predecisional. *Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec.*, Civ. A. No. 20-2468 (RCL), 2022 WL 4534730, at *4 (D.D.C. Sept. 28, 2022) (deeming records predecisional where they were created to make findings and recommendations to shape agency policy and were non-final).

### B. The Draft Statement of Work is Deliberative.

Deliberative records are those "prepared to help the agency formulate its position," *Sierra Club,* 141 S. Ct. at 786, by implicating the "consultative process" including communications that reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's proposed policies. *Reps. Comm. For Freedom of the Press v. FBI*, 3 F.4th 350, 364 (2021). In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.* (quoting *Machado*, 971 F.3d at 370); *see Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating

that documents part of the deliberative process make recommendations or express opinions on legal or policy matters).

To assist courts in evaluating whether disputed records are deliberative, the D.C. Circuit advised agencies to explain four factors: (1) what deliberative process is involved; (2) the role played by the disputed documents in the course of that process; (3) the nature of the decision making authority vested in the person issuing the disputed document; and (4) the relative position in the agency's chain of command of the persons authoring and receiving the document. *Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 55 (D.C. Cir. 2021).

Here, the NIH's explanations concerning the *Judicial Watch* factors show that these communications were deliberative. On the first and second factors, the Statement of Work was an initial draft that was circulated for review by other NIH staff as part of the process of developing a Statement of Work that could be released to prospective contractors. Garcia-Malene Decl. ¶ 21. The fact that the document is a draft is clear from the redline, tracked changes throughout the document, and the comments included in the side panel. *Id.* This record was sent internally for review by NIH personnel who provided candid edits and comments on the draft. *Id.* Thus, the draft represents the give and take in the review process of contract documents prior to their finalization. *Id.* This is consistent with the definition of "deliberative" communications, as they were "prepared to help the agency formulate its position." *Sierra Club*, 141 S. Ct. at 786; *Grummian Aircraft*, 421 U.S. at 184 (noting materials protected by the privilege are "predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision"); *Coastal States*, 617 F.2d at 866, (the privilege "covers recommendations, draft documents, proposals . . . and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency"); *Brown v. Dep't of State*, 317 F. Supp. 3d 370, 377 (D.D.C.

2011) (a draft letter that "appears to have been developed as part of a pre-decisional and deliberative process leading up to the drafting and transmission of a final letter, . . . is precisely the type of document that would come within this privilege.")

The third and fourth factors from *Judicial Watch*, 20 F.4th at 55, do not detract from the Agency's conclusion that the withheld documents are deliberative. As discussed in *Senate of the Commonwealth of Puerto Rico v. Department of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987), the third and fourth factors may be relevant to the extent they allow the court to consider the inference that "intra-agency memoranda from 'subordinate' to 'superior' [tend to be] more likely to be deliberative in character than documents traveling in opposite direction." (referencing *Schlefer v. United States,* 702 F.2d 233, 238 (D.C. Cir. 1983)). The D.C. Circuit's rationale is that discussions led by superiors and given to subordinates may be more likely to "simply describe already-made and in-place policy choices," as opposed to "debat[ing] proposed agency policies, positions, and actions." *Reps. Comm.*, 3 F.4th at 367.

The hierarchical relationship between the sender and the recipient of the draft Statement of Work is not readily discernable. See Garcia-Malene Decl. ¶ 22. To the extent Plaintiff intends to rely on the argument that the statement of work could not be deliberative because it is unclear whether given from a subordinate to a superior, such an argument would not undermine the conclusion that these records are deliberative because "[t]here is no such directional precondition to protection under the deliberative process privilege." *Reps. Comm.*, 3 F.4th at 364 (adding that there was no evidence in that case that the supervisor was simply giving direction instead of deliberating with subordinates). Instead, the "key to whether a document is deliberative" is whether it is part of the "give-and-take" of the "consultative process." *Id.* at 364. The draft statement of work with its comments and redlines was developed as part of reaching a final

- 8 -

decision on the exact Statement of work to release to prospective contractors and thus is part of the consultive process.  Garcia-Malene Decl. ¶ 22.  *Reps. Comm.*, 3 F.4th 363 (holding the deliberative process privilege protects "internal dialogue about critical judgment calls aimed at advancing the agency's interests"); *Story of Stuff Project v. U.S. Forest Serv.*, 345 F. Supp. 3d 79, 95–96 (D.D.C. 2018) (finding that documents containing ongoing discussions among Forest Service interdisciplinary teams assessing proposals about how to collect data on waterways were properly exempt under deliberative process privilege).

### C.    Releasing the draft Statement of Work would cause foreseeable harm to the interests that the deliberative process privilege protects.

An Agency seeking to withhold records under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Reps. Comm.*, 3 F.4th at 370.  Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld."  *Id*. at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).  NIH has carried its burden here.  Because this is a draft, non-final version of the statement of work, releasing it would lead the public to misunderstand the work that was done under the contract and would discourage NIH staff from offering comments and edits on important draft contract documents before they are shared externally.  Garcia-Malene Decl. ¶ 23. Even worse, the document would provide insights on NIH's strategies for negotiating contracts. *Id.*  Releasing this information about negotiation strategies will make it more difficult for NIH to obtain contracts on the best possible terms for NIH and, by extension, the American taxpayer.  *Id.*

- 9 -

Courts have found this type of showing is sufficient to demonstrate foreseeable harm. *Mink*, 410 U.S. at 87 (explaining that the objective of the deliberative process privilege is to protect the candor of agency decision-making which would be harmed if employees were forced to "operate in a fishbowl"); *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 15 (D.D.C. 2021) (finding foreseeable harm to candor were details from analysis and recommendations from grant proposals released); *Chelmowski v. Environmental Protection Agency*, Civ. A. No. 22-3177 (RDM), slip. op. at 18 (D.D.C. Mar. 31, 2025) (finding foreseeable harm where the agency explained "release of these deliberative materials would impede employees' ability to have 'open and frank' conversations about how to process and respond to FOIA requests"); *Donatos Sarras v. Dep't of Just.*, Civ. A. No. 19-0861 (CRC), 2021 U.S. Dist. LEXIS 259259, at *20-21 (D.D.C. Aug. 5, 2021) (recognizing candor as an interest protected by Exemption 5).  Accordingly, NIH has provided this Court "a focused and concrete demonstration of why disclosure of the particular type of material at issue"—draft, non-final statements of work—will, "in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  *Reps. Comm.*, 3 F.4th at 370; *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) ("Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position.").

## II.    **NIH Appropriately Withheld Information Under Exemption 6.**

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  It "requires a court to 'pursue two lines of inquiry,' first determining whether the records at issues are personnel, medical, or similar files, and then determining whether their disclosure would 'constitute a clearly unwarranted invasion of personal privacy,' which requires

balancing 'the privacy interest that would be compromised by disclosure against any public interest in the requested information.'" *Multi Ag Media LLC v. Dep't of Agric.,* 515 F.3d 1224, 1228 (D.C. Cir. 2008). "The term 'similar files' is to be construed broadly and includes any 'disclosure of information which applies to a particular individual." *Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 600 (1982).

If the threshold requirement of ''personnel and medical files and similar files'' is met, the Court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999). If a requesting party cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Thus, "unless a FOIA request advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *Dep't of Just. v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health and Human Services*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Here, NIH is withholding the names and contact information of individuals who made submissions to the BioSample Database and later requested withdrawal from the database, information sufficient to identify names of individuals who made submissions to the Sequence

- 11 -

Read Archive database and later requested withdrawal from the database, and the names and contact information of NIH employees who work on the Sequence Read Archive database. Garcia-Malene Decl. ¶ 24. This type of identifying information is routinely protected under Exemption 6. *Dep't of State v. Wash. Post*, 456 U.S. 595, 600 (1982) ("[i]nformation such as place of birth, date of birth, date of marriage, employment history, and comparable data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy"); *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (explaining FOIA Exemption 6's applicability to "bits of personal information, such as names and addresses, the release of which could create a palpable threat to privacy"). Crucially, the privacy interest is particularly strong with respect to these records because they concern COVID-19 research. Garcia-Malene Decl. ¶ 26. NIH has learned from experience that employees and third-party researchers publicly associated with COVID-19 research regularly face harassment and even death threats. *Id.* ¶¶ 26-27. The threats to personal safety that a third-party researcher or NIH employee could face from being associated with controversial subject matter like COVID-19 strengthen these individuals' interest in having their names and identifying information protected. *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (finding employees named in records concerning abortion drug testing were properly protected pursuant to Exemption 6 to ensure employees' safety); *Seife v. U.S. Dep't of State*, 366 F. Supp. 3d 592, 610-11 (S.D.N.Y. 2019) (finding disclosure of the names of three Department of State briefers could impact their personal safety).

On the other hand, even if there is some *de minimus* public interest this information, the names and identifying information do not reveal how sequences are submitted or withdrawn, the criteria for submitting or withdrawing sequences, or whether state or federal laws were followed.

- 12 -

Garcia-Malene Decl. ¶ 30.  "The public does not learn anything about 'what [its] government is up to' by gaining access to 'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.'" *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (quoting *Reps. Comm.*, 489 U.S. at 773) (upholding SEC's withholding of identifying information of SEC staff); *see also Carlborg v. Dep't of Navy*, Civ. A. No. 18-1881 (DLF), 2020 WL 4583270, at *8 (D.D.C. Aug. 10, 2020) (Department of Defense personnel's privacy interest in "keeping their names and personal identifying information from being disclosed" outweighed "minimal" public interest as names and identifying information reveal little or nothing about what the government is up to).  Given that the only public interest relevant for purposes of Exemption 6 is one that focuses on "the citizens' right to be informed about what their government is up to," that interest cannot overcome the NIH employees' and third party researchers' interests here because such disclosure will "reveal[] little or nothing about an agency's own conduct." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492-93 (D.C. Cir. 1993) (quoting *Reps. Comm.*, 489 U.S. at 773).

The foreseeable harm of disclosing this information is readily shown.  "Context and purpose" of withheld information can establish foreseeable harm, and "agencies can more easily meet their foreseeable harm burden when invoking exemptions 'for which the risk of harm through disclosure is more self-evident.'" *Kendrick v. DEA*, Civ. A. No. 21-1624 (TNM), 2022 U.S. Dist. LEXIS 153299, *10 (D.D.C. Aug. 25, 2022) (quoting, *Reporters Committee v. CBP,* 567 F. Supp. 3d 97, 120 (D.D.C. 2021)).  Fulfilling the terms of Exemption 6 "goes a long way to meeting the foreseeable harm requirement." *Kendrick v. FBI*, Civ. A. No. 20-2900 (TNM), 2022 U.S. Dist. LEXIS 175454, at *8-9 (D.D.C. Sept. 28, 2022).  Here, NIH determined releasing this information could cause the individuals whose identities are withheld to suffer harassment and threats of

- 13 -

violence.  Garcia- Malene Decl. ¶¶ 26-27.  This concern is not theoretical because NIH has identified specific past incidents of harassment and threats directed at scientists, researchers, and health professionals who work on combatting the spread of COVID-19.  *Id*. ¶ 27.  Courts have found that concerns about harassment and threats to personal safety are sufficient to establish foreseeable harm that would come with releasing information that is otherwise exempt from disclosure under Exemption 6.  *Jud. Watch, Inc. v. Dep't of Health and Human Serv.*, Civ. A. No. 22-3051 (DLF), 2024 U.S. Dist. LEXIS 151292, at \*11 (D.D.C. Aug. 23, 2024) (finding foreseeable harm where "NIH withheld the identities of the employees in order to protect those individuals from harassment and threats."); *Inst. for Energy Rsch. v. FERC*, Civ. A. No. 22-3419 (CKK), 2024 U.S. Dist. LEXIS 131312, \*24 (D.D.C. Jul. 25, 2024) (declarant's explanation that "employees would be subject to annoyance, threats, embarrassment, is sufficient to satisfy the foreseeability requirement" under Exemption 6); *Talbot v. Dep't of State*, 315 F. Supp. 3d 355, 374 (D.D.C. 2018) (upholding invocation of Exemption 6 where "the release of [withheld] names and other identifying information would be reasonably likely to subject individuals or those associated with them to increased harassment or threats.").

### III.    NIH Produced All Reasonably Segregable Information.

Although an agency may properly withhold records or parts of records under one or more FOIA exemptions, it "must release 'any reasonably segregable portions' of responsive records that do not contain exempt information.'"  *Agrama v. IRS*, 282 F. Supp. 3d 264, 275 (D.D.C. 2017); see also 5 U.S.C. § 552(b) (requiring that "any reasonably segregable portion of a record shall be provided to [the requester] after deletion of the portions which are exempt").  Non-exempt portions of a document "must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data*, 566 F.2d at 260.  Before approving the application of a FOIA exemption, district courts must make specific findings of segregability as to the material to be withheld.  *Summers v.*

*Dep't of Just.*, 140 F.3d 1077, 1081 (D.C. Cir. 1998).  Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material.  *Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin.,* 71 F.4th 1051, 1057-58 (D.C. Cir. 2023)

To carry its burden that it released all reasonably segregable information, an agency must demonstrate that no "exempt portions of a record could be disclosed without causing foreseeable harm to the interests protected by" the relevant FOIA exemption.  *Rudometkin v. United States*, No. 23-5180, 2025 U.S. App. LEXIS 14178, at *23-24 (D.C. Cir. Jun. 10, 2025); *Leopold v. Dep't of Just.*, 94 F.4th 33, 38 (D.C. Cir. 2024).  "Whether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries."  *Leopold*, 94 F.4th at 37.  This inquiry also requires that the Agency consider whether there is foreseeable harm from disclosure of otherwise exempt information, including whether partial disclosure of information is possible.  *Id*. at 38.  NIH has made the required segregability showing.  Specifically, NIH "reviewed the challenged record line-by-line and produced all of the material that could be reasonably segregated within the record," and as part of this analysis "considered the foreseeable harm in release of the material that NIH continues to withhold."   Garcia- Malene Decl. ¶ 32.

Accordingly, this Court should enter summary judgment in Defendants favor because Defendants performed a reasonable search, provided responsive records, properly applied FOIA exemptions to justify withholdings, and explained that no additional non-exempt information can be segregated from the exempt information.  *See SafeCard Servs.*, 926 F.2d at 1201 (observing that courts give agency declarations "a presumption of good faith" in FOIA cases).

## CONCLUSION

For these reasons, the Court should grant summary judgment in Defendants' favor.

Dated: June 17, 2025                    Respectfully submitted,

                                        JEANINE FERRIS PIRRO
                                        United States Attorney


                                        By:        */s/ John J. Bardo*
                                            JOHN J. BARDO, D.C. Bar, #1655534
                                            Assistant United States Attorney
                                            601 D Street, NW
                                            Washington, DC 20530
                                            (202) 870-6770

                                        *Attorneys for the United States of America*

- 16 -