UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>        Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Defendant. | Civil Action No. 23-0926 (SLS) |

**DEFENDANTS' COMBINED REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN OPPOSITION TO <u>PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT</u>**

Defendants Department of Health and Human Services, along with its component, the National Institutes of Health ("NIH"), respectfully submit this reply in support of their motion for summary judgment and in opposition to Plaintiff Informed Consent Action Network's Cross-Motion for Summary Judgment.

## INTRODUCTION

With Plaintiff agreeing to abandon its challenge to Defendants' Exemption 5 withholdings, the sole remaining issue is whether Defendants appropriately withheld names and contact information of third-party researchers who submitted, and later requested withdrawal of, entries from the BioSample and Sequence Read Archive databases and the names and contact information of NIH employees who work on the Sequence Read Archive database under Exemption 6. Opp'n at 11 (ECF No. 31-1). As demonstrated below, these individuals have a substantial privacy interest in not being publicly associated with these records and their privacy interest outweighs any public interest in disclosing their names and contact information.

## ARGUMENT

Exemption 6 of the Freedom of Information Act, 5 U.S.C. § 552(b)(6), otherwise known as the personal privacy exemption, allows the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *Id.* The appropriateness of Exemption 6's invocation to withhold personal identifying information is determined through a balancing test. Once it is determined that disclosure would compromise more than a *di minimus* privacy interest, the court weighs the privacy interest at stake against the public interest in disclosure. *Am. Immigr. Lawyers Ass'n v. Exec. Office for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016). Crucially, it is "the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest. To

satisfy, the public interest must be significant." *James Madison Project v. Dep't of Just.*, 208 F. Supp. 3d 265, 283-84 (D.D.C. 2016); *see also Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 502 (1994) (finding federal employees' privacy interests in their home addresses outweighed the negligible public interest).

**I.      Third-Party Researchers and NIH Employees Have a Substantial Privacy Interest in <u>Not Being Publicly Associated With These Records.</u>**

"The threat to privacy . . . need not be patent or obvious to be relevant." *Pub. Citizen Health Rsch. Grp. v. Dep't of Labor*, 591 F.2d 808, 809 (D.C. Cir. 1978). But here, the threat to privacy is obvious because Plaintiff is seeking information about outside researchers and NIH employees involved with COVID-19 research, and individuals associated with COVID-19 research have faced "ongoing" and "unrelenting harassment." Garcia-Malene Decl. ¶¶ 26-27 (ECF No. 29-2). Plaintiff dismisses these concerns as "hypothetical," "speculative," or "abstract;" however, recent events show that these concerns are real. Just three weeks ago, Georgia resident Patrick Joseph White fired more than 180 shots with a long gun at the headquarters for the Centers for Disease Control and Prevention ("CDC") in Atlanta. Charlotte Kramon and Jeff Martin, Shooter attacked CDC headquarters to protest COVID-19 vaccines, Associated Press (Aug. 12, 2025), https://apnews.com/article/cdc-shooting-georgia-gunman-slain-officer-085d0d46cf2095193f9a65807876ebd5. Following the shooting, Georgia law enforcement searched White's home and found documents expressing White's "discontent with the COVID-19 vaccinations." *Id.*

The CDC shooting is not the first incident demonstrating that individuals associated with COVID-19 research are prone to threats of violence. As NIH FOIA Officer Gorka Garcia-Melene explained in a declaration written before the shooting at CDC headquarters,

for years, NIH colleagues and third-party researchers have received threats of violence to their person on issues generating similar passions as those relating to COVID-19 research. . . . Scientists, leadership and staff in any way associated with . . . the pandemic are regularly targeted with abusive communications, including death threats.

Garcia-Malene Decl. ¶ 27.

Courts consistently allow agencies to withhold names, contact information, and identifying information of federal employees working on sensitive matters or when releasing their information would subject them to harassment or harm. *See Civ. Beat L. Ctr. for the Pub. Int., Inc. v. CDC*, 929 F.3d 1079, 1092 (9th Cir. 2019) (upholding protection of identities and contact information of CDC employees involved in inspection of dangerous biotoxins, despite availability of their names in public directory, because they have knowledge of security measures and could face harassment or threats); *Jud. Watch, Inc. v. Dep't of Health and Human Services*, Civ. A. No. 22-3051 (DLF), 2024 U.S. Dist. LEXIS 151292, at *8 (D.D.C. Aug. 23, 2024), *aff'd* 2025 U.S. App. LEXIS 8955 (D.C. Cir. Apr. 14, 2025) (allowing NIH to withhold names and contact information of employees who conducted research on fetal tissue because Garcia-Melene provided specific, concrete examples of past serious threats, levied against both NIH staff involved in Covid research and staff at other institutions involved in fetal tissue research."); *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d at 125 ("[I]ndividuals associated with an unpopular agency action might be subject to public scrutiny and perhaps harassment.").

Next, Plaintiff argues third-party researchers have a reduced privacy interest in having their identities revealed because they "publish under their real names, are often already publicly associated with the genomic data submissions through journal articles or conference presentations, and have voluntarily engaged in scientific activity designed for public dissemination." Opp'n at 16. But Plaintiff is making assumptions about third-party researchers without knowing who they

- 3 -

are or if they would even qualify as public figures.  Even if these researchers are public figures or well-known within the scientific or genomic research community, it is not publicly known that they submitted entries to the Sequence Read Archive database and later requested that their submissions be withdrawn, and Courts have declined to find that a public figure has a diminished privacy interest in aspects of his or life are not publicly known.  *See e.g., Hunt v. U.S. Marine Corps*, 935 F. Supp. 46, 54 (D.D.C. 1996) (finding that senatorial candidate has unquestionable privacy interest in their military service personnel records and medical records).   Because courts have reached this same conclusion with records regarding presidents, *Prop of the People v. Dep't of Just.*, 310 F. Supp. 3d 57, 69-70 (D.D.C. 2018) (concluding that President Donald Trump "retained a privacy interest in whether his name appears in investigative records from 1946 to 2015"), and princes, *Heritage Found. v. Dep't of Homeland Sec.*, 754 F. Supp. 3d 73, 76-79 (D.D.C. 2024) (finding Prince Harry, the Duke of Sussex, "has a reasonable privacy interest in his immigration records not known to the public"), the Court should reach the same conclusion for researchers who may be prominent in the scientific research community but are not household names among the American public.

Finally, although Plaintiff does not make this argument explicitly, Plaintiff notes, at multiple points, that the third-party researchers are Chinese Nationals.  *See e.g.* Opp'n at 14, 23. To the extent that Plaintiff is attempting to argue that foreign nationals have diminished privacy interests under FOIA, the Supreme Court has rejected that argument, *see Dep't of State v. Ray*, 502 U.S. 164, 175-79 (1991) (applying traditional analysis of privacy interests under FOIA to Haitian Nationals), and thus the Court should not consider it here.

Accordingly, Defendants have established that the individuals identified in these records have a substantial privacy interest on not having their names and contact information publicly disclosed.

## II.    The Public Interest in These Individuals' Names and Contact Information does not Outweigh their Privacy Interests.

Plaintiff has not articulated a public interest that outweighs the NIH employees' and third-party researchers' interest in keeping their association with these records confidential. "Unless a FOIA request advances the citizens' right to be informed about what the government is up to, no relevant public interest is at issue." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002). Even if there were some public interest in the names of individuals who submitted DNA sequences to the Sequence Read Archive and the NIH employees who handled these requests, contrary to Plaintiff's assertions, Opp'n at 17, the information "does not reveal how sequences are submitted or withdrawn, the criteria for submitting or withdrawing sequences, or whether state or federal laws were followed." Garcia-Melane Decl. ¶ 30; *Cf. Dep't of Just v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (Information that informs the public about "an agency's performance of its statutory duties falls squarely within" the purpose of FOIA").

Plaintiff argues there is a public interest in learning the names of individuals who submitted data and later asked that it be deleted that overrides these individuals' privacy interest. Opp'n at 18. This is incorrect because the identity of a third-party researcher who asked that the information he or she submitted be removed, at most, provides insight into the professional conduct of that researcher, not the government. *See, Reporters Comm.*, 489 U.S. at 773 (The public "does not learn anything about what its government is up to" by gaining access to information about private citizens that "reveals little or nothing about an agency's own conduct."); *Swope v. Dep't of Just,*

439 F. Supp. 2d 1, 6 (D.D.C. 2006) ("In the absence of any evidence that the government agency has engaged in illegal activity, information that interferes with a third party's privacy is exempt from disclosure"); *see also, Project on Gov't Oversight, Inc. v. Off. of Special Couns*., Civ. A. No. 22-3381 (DLF), 2024 U.S. Dist. LEXIS 48531, at \*10 (D.D.C. Mar. 19, 2024) ("FOIA protects the public's right to know how agencies carry out 'their . . . statutory duties,' not its right to learn what the subjects of law-enforcement investigations are 'up to.'").

With respect to the NIH employees, any public interest in knowing the identities of NIH employees who managed the Sequence Research Archive database is dwarfed by their substantial privacy interest in avoiding harassment or threats of violence because of their association with COVID-19 research. *Jud. Watch, Inc*, 2024 U.S. Dist. LEXIS 151292, at \*11-12 ("Any minimal public benefit of disclosing the NIH employees' names and titles does not outweigh the substantial privacy interests at stake" in avoiding threats and harassment); *Billington v. Dep't of Just*, 245 F. Supp. 2d 79, 87 (D.D.C. 2003) (finding an Internal Revenue Service employee's name can be withheld because the "employee's interest in privacy outweighs any public interest in disclosure" because of the harassment he could face by being associated with the IRS).

Plaintiffs claim they seek to learn information about government COVID research, China's involvement in that research, China's role in the origins of the pandemic, and the propriety of government funded activities. Opp'n at 17, 21. But this does not justify disclosure of names of NIH employees or third-party researchers and their contact information because such information will not provide any insights into those questions. Garcia-Melane Decl. ¶ 30; *Jud. Watch, Inc*, 2024 U.S. Dist. LEXIS 151292, at \*10 (releasing NIH employee names "would not reveal how the . . . grants were administered, the amount of funding provided, how research was conducted, or whether grant recipients complied with state and federal law."); *Smith v. Dep't of Treasury*, Civ.

A. No. 17-1796 (TSC), 2020 U.S. Dist. LEXIS 11195, at *15 (D.D.C. Jan. 23, 2020) ("Disclosing names of non-senior Treasury employees in sensitive positions or cell phone numbers of any employee will not allow the public to better understand how the agency performs its statutory duties.").

Accordingly, to the extent that there is any public interest in the names and contact information of NIH employees or third-party researchers, those individuals' substantial privacy interest overrides the public interest (if any) in disclosure.

## III.   NIH Identified Foreseeable Harm that Would Occur From Releasing Exempt Information.

NIH has established that the foreseeable harm that will occur should this information be released, namely the harassment and threats of violence that these individuals would face if NIH were to publicly disclose their involvement with COVID-19 research. Garcia-Malene Decl. ¶¶ 26-28. Plaintiff again dismisses these concerns as "speculative generalizations," Opp'n at 22-23, but as already explained in Part I above, the concerns are based on prior experience. "Scientists, leadership and any staff in any way associated with . . . the pandemic are regularly targeted with abusive communication including death threats." Garcia-Malene Decl. ¶ 27.[1] Courts routinely uphold similar explanations of foreseeable harm in the Exemption 6 context. *See e.g. Jud. Watch, Inc.*, 2024 U.S. Dist. LEXIS 151292, at *11 (finding NIH's explanation that it "withheld the identities of the employees in order to protect those individuals from harassment and threats" "clearly met" the foreseeable harm standard); *Inst. for Energy Rsch. v. FERC*, Civ. A. No. 22-3419 (CKK), 2024 U.S. Dist. LEXIS 131312, at *24 (D.D.C. Jul. 25, 2024) ("[E]xplanation that

---

[1]   *See   also*   https://apnews.com/article/cdc-shooting-georgia-gunman-slain-officer-085d0d46cf2095193f9a65807876ebd5 (reporting shooting at CDC headquarters relating to COVID issues).

employees would be subject to annoyance, threats, embarrassment, is sufficient to satisfy the foreseeability requirement.*"); Env't & Pol'y Inst. v. Tenn. Valley Auth.*, Civ. A. No. 22-0220, 2024 U.S. Dist. LEXIS 190852, \*29 (E.D. Tenn. Oct. 21, 2024) (finding foreseeable harm in releasing information withheld under Exemption 6 because "defendant's concerns about harassment and unwanted contact are specific to the individuals' whose information is sought by plaintiff."); *Sea Shepherd Legal v. Nat'l Oceanic & Atmospheric Admin.*, 516 F. Supp. 3d 1217, 1241 (W.D. Wash. 2021) (finding explanation that releasing information "could expose the owner of the [information] to harassment" is sufficient to establish foreseeable harm under Exemption 6.)

Accordingly, Defendants have articulated the foreseeable harm that will occur from releasing the withheld information with requisite specificity.

## IV.    NIH Determined that Further Information Could Not be Segregated.

Plaintiff argues that NIH could have released information additional information such as institution names and job titles.  Opp'n at 24.  But Garcia-Malene reviewed the challenged documents line by line and determined that no additional information could be reasonably segregated from the records, and any further segregation "would cause foreseeable harm that he identified, specifically, threats of violence toward people who by nature of this release, would become publicly associated with COVID-19 research."  Garcia-Malene Decl. ¶ 32.  In other words, any further release would provide identifying information sufficient to allow for identification of the individuals whose names that NIH seeks to withhold.  *Id.*  FOIA allows agencies to withhold portions of records under the personal privacy exemption where the "person's identity might be revealed based on the content of the document[.]" *Boyd v. Exec. Off. of U.S. Atty's*, 161 F. Supp. 3d 1, 11 (D.D.C. 2015).  Here, "even sanitized," the redacted portions would enable [the Plaintiff] and others who [have] specific knowledge of [the facts and events at issue in the witness

statements], to identify readily the [third-parties] and persons discussed in each document." *Id.; see also Reporters Comm. For Freedom of the Press v. FBI,* 2022 U.S. Dist. LEXIS 192383, at *21 (D.D.C. Oct. 21, 2022) (allowing the agency to withhold information that "when taken together in the aggregate could reveal protected information.").

Moreover, Plaintiff's suggestion of redacting only email addresses and phone numbers would not be practical because by releasing their names would, itself publicly associate them with COVID-19 research and make them targets for harassment and threats of violence. Garcia-Malene Decl. ¶¶ 27-29. Knowing an individual's name is sufficient to find other information about them including their phone number and home address. *See WhitePages*, https://www.whitepages.com/ (last visited Aug. 23, 2025).

Accordingly, Defendants are entitled to summary judgment on their segregability analysis.

## CONCLUSION

For these reasons, and the reasons stated in Defendants' motion for summary judgment, the Court should grant Defendants' motion for summary judgment and deny Plaintiff's cross motion for summary judgment.

Dated: August 28, 2025
       Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By:       */s/ John J. Bardo*
          JOHN J. BARDO, D.C. Bar #1655534
          Assistant United States Attorney
          601 D Street, NW
          Washington, DC 20530
          (202) 870-6770

*Attorneys for the United States of America*