UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFORMED CONSENT ACTION
NETWORK,

    *Plaintiff*,

    v.

NATIONAL INSTITUTES OF HEALTH,
*et al.*,

    *Defendants*.

Civil Action No. 23-926 (SLS)

Judge Sparkle L. Sooknanan

## **MEMORANDUM OPINION**

Informed Consent Action Network (ICAN) is a nonprofit organization that seeks to raise public awareness about vaccine safety. In February 2022, ICAN submitted two Freedom of Information Act (FOIA) requests to the National Institutes of Health (NIH) seeking records related to the June 2020 removal of early COVID-19 genetic sequencing data from an NIH-administered database. NIH has since provided much of the material ICAN requested. But it has refused to disclose identifying information for the researchers who requested the removal of the relevant sequencing data and for NIH personnel who administer the database. NIH now moves for summary judgment, defending those withholdings under FOIA Exemption 6. ICAN disputes the application of that exemption and cross-moves for summary judgment. For the reasons explained below, the Court grants summary judgment in NIH's favor.

### **BACKGROUND**

    **A.**    **Statutory Background**

FOIA "implement[s] a general philosophy of full agency disclosure." *DOJ v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989) (cleaned up). The statute "requires every

federal agency, upon request, to make 'promptly available to any person' any 'records' so long as the request 'reasonably describes such records.'" *Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(a)(3)). Agencies must construe FOIA requests liberally and can only withhold or redact documents if the information requested "falls within one of nine statutory exemptions." *People for the Ethical Treatment of Animals* (*PETA*) *v. NIH*, 745 F.3d 535, 540 (D.C. Cir. 2014) (citing 5 U.S.C. § 552(b)(1)–(9)). These exemptions demonstrate that the public's right to information is "not absolute and that disclosure of certain information 'may harm legitimate governmental or private interests.'" *Martin v. DOJ*, 488 F.3d 446, 453 (D.C. Cir. 2007) (quoting *Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)). The agency bears the burden of establishing that an exemption applies and ordinarily "must disclose all reasonably segregable, nonexempt portions of the requested record(s)." *PETA*, 745 F.3d at 540 (cleaned up).

  **B.**   **Factual Background**

  On February 10, 2022, ICAN submitted two FOIA requests to NIH. Defs.' Statement of Material Facts (DSMF) ¶ 1, ECF No. 29-1; Pl.'s Statement of Material Facts (PSMF) ¶ 2, ECF No. 31-2; *see also* First Request, ECF No. 1-1 at 10; Second Request, ECF No. 1-1 at 18. Both requests referenced and attached a June 4, 2021, article in Yahoo News by Jerry Dunleavy entitled "NIH defends deleting Covid-19 genetic data pointing to lab leak origin." DSMF ¶ 2; PSMF ¶ 2; *see also* ECF No. 1-1 at 13. The Yahoo News article discussed a recently published scientific paper by University of Washington Professor Jesse Bloom noting that "a data set containing SARS-CoV-2 sequences from early in the Wuhan epidemic" had been "deleted from the NIH's Sequence Read Archive." ECF No. 1-1 at 14.

ICAN's First Request sought (1) "[a] copy of 'the request to remove the data in June 2020' referenced in the [Yahoo News article]"; (2) "[a]ll communications regarding 'the request to remove the data in June 2020'"; and (3) "[a]ll communications regarding the removal of 'the data in June 2020.'" First Request at 1. The Second Request sought "[a]ll documents concerning the NIH's 'review' of data removed from the National Center for Biotechnology Information's (NCBI) Sequence Read Archive (SRA) data system, in light of the findings of Jesse D. Bloom, and his publication titled *Recovery of deleted deep sequencing data shed more light on the early Wuhan SARS-CoV-2 epidemic* as referenced in the [Yahoo News article]." Second Request at 1.[1]

On November 28, 2022, NIH issued final responses to ICAN's requests. PSMF ¶ 3. NIH produced sixty-two pages in response to the First Request and seventy-five pages in response to the Second Request. PSFM ¶ 3. NIH redacted information in both productions that it claimed was protected from disclosure by FOIA Exemption 6. ECF No. 1-1 at 26, 29. On February 15, 2023, ICAN appealed NIH's responses, asserting that NIH "improperly withheld records under FOIA Exemption 6" and had "failed to conduct an adequate search of the requested records." PSMF ¶ 4. On April 4, 2023, after receiving no response to its appeals, ICAN filed this lawsuit. PSMF ¶ 5.

Since this suit began, NIH has produced an additional 1,007 pages of documents and the Parties have narrowed their disputes regarding NIH's withholdings. DSMF ¶¶ 6–7; PSMF at 5. Only one disagreement remains: whether NIH properly invoked Exemption 6 when it redacted (1) identifying information for individuals who submitted data to the BioSample and SRA databases and later requested withdrawal of that data, and (2) identifying information for NIH

---

[1] *See also* Jesse D. Bloom, *Recovery of Deleted Deep Sequencing Data Sheds More Light on the Early Wuhan SARS-CoV-2 Epidemic*, 38 Molecular Biology & Evolution 5211 (2021), *available at* https://doi.org/10.1093/molbev/msab246 [https://perma.cc/G2KC-NGPB].

employees who work on the SRA database. DSMF ¶ 7; *see also* Pl.'s Mot. Summ. J. & Opp'n to Defs.' Mot. Summ. J. (Pl.'s Mot.) 3, 8, ECF No. 31-1.[2]

## C. Procedural Background

ICAN filed this lawsuit on April 4, 2023, against NIH and the United States Department of Health and Human Services (collectively, NIH). Compl., ECF No. 1. On June 17, 2025, NIH moved for summary judgment. Defs.' Mot. Summ. J. (Defs.' Mot.), ECF No. 29. On July 17, 2025, ICAN cross-moved for summary judgment. Pl.'s Mot. Summ. J., ECF No. 31. Both motions are now ripe for review. *See* Defs.' Opp'n to Pl.'s Mot. Summ. J. & Reply Supp. Mot. Summ. J. (Defs.' Reply), ECF No. 34; Pl.'s Reply Supp. Mot. Summ. J. & Further Opp'n to Defs.' Mot. Summ. J. (Pl.'s Reply), ECF No. 37; Defs.' Notice & Suppl. Decl., ECF No. 41.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, an agency is entitled to summary judgment if it establishes that "no material facts are in dispute" and that all information subject to a request has either "been produced or is wholly exempt from the Act's inspection requirements." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (cleaned up).

---

[2] On February 12, 2026, NIH submitted a Notice and Supplemental Declaration from FOIA Officer Karen Lampe confirming that the only materials that continue to be withheld are names, titles, and email addresses of researchers and certain NIH personnel, as well as "organization names and case numbers that had SARS-COV2 withdrawals." Lampe Decl. Ex B, ECF No. 41-3. As to the latter information, NIH explained that the "[r]elease of the organization could identify the individual [researcher] as most researchers' projects are specific and generally don't overlap with others at their same institution." *Id.*

4

Typically, an "agency demonstrates the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. DOJ*, 893 F.3d 796, 799 (D.C. Cir. 2018). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).

## DISCUSSION

The Parties dispute whether NIH appropriately invoked FOIA Exemption 6 to withhold identifying information for (1) Chinese researchers who submitted and later requested withdrawal of entries in the BioSample and SRA databases, and (2) NIH employees who work on the SRA database. Defs.' Mot. 11–12; Pl.'s Mot. 8. The Court concludes that NIH properly withheld this information and is thus entitled to summary judgment.[3]

### A.   Exemption 6

FOIA's Exemption 6 seeks to "protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). It does so by allowing agencies to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see also Jud. Watch, Inc.*

---

[3] NIH also moved for summary judgment with respect to certain withholdings under FOIA's Exemption 5. Defs.' Mot. 4–10. But ICAN clarified in its cross-motion that it is not challenging any withholdings under Exemption 5. Pl.'s Mot. 5. Thus, the only issue before the Court is NIH's reliance on Exemption 6.

*v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006). A court reviewing whether Exemption 6 was properly invoked must answer two questions. First, it must determine whether the records sought are "personnel," "medical," or "similar files." 5 U.S.C. § 552(b)(6). Second, it must "determine whether disclosure would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up). "If a substantial privacy interest is at stake, then the court must 'balance' the individual's right of privacy against the public interest in disclosure." *Id.* (quoting *Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005)). Additionally, the court must find that the agency "reasonably foresees that disclosure would harm an interest protected by" Exemption 6. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I).

1.  **Exemption 6 Coverage**

Section 552(b)(6) permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" includes "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89–1497, at 11 (1966)). "The information in the file need not be intimate," *Shapiro v. DOJ*, 34 F. Supp. 3d 89, 94 (D.D.C. 2014) (cleaned up), and includes "bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy," *Jud. Watch v. FDA*, 449 F.3d at 152 (cleaned up).

Here, the names, email addresses, and other identifying information of the researchers and NIH employees fit comfortably within the definition of "similar files" that may be protected from disclosure by Exemption 6. *See id.* at 152–53 (FDA "properly used Exemption 6" to redact "the names of agency personnel and private individuals . . . who worked on the approval of [the abortion drug] mifepristone"); *see also Jud. Watch, Inc. v. HHS*, No. 22-cv-3051, 2024 WL 3924563, at

\*1–4 (D.D.C. Aug. 23, 2024) (NIH properly relied on Exemption 6 to withhold the names and titles of "two agency employees associated with a research grant involving the use of human fetal tissue").

### 2. Privacy Interest

The next question is whether disclosure of that information "would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Prison Legal News*, 787 F.3d at 1147 (cleaned up). Here, NIH has established that disclosing the redacted information would compromise a substantial privacy interest held by the researchers and NIH personnel who could be identified by that disclosure.

NIH FOIA Officer Gorka Garcia-Malene attested that "[f]or years, NIH colleagues and third-party researchers have received threats of violence to their person on issues generating similar passions as those relating to COVID-19 research." Garcia-Malene Decl. ¶ 27, ECF No. 29-2. He noted that "[s]cientists, leadership, and staff in any way associated with . . . the pandemic are regularly targeted with abusive communications, including death threats." *Id.* In some instances, as with Dr. Anthony Fauci, the extent of the harassment faced by these individuals has raised concerns about their physical safety. *Id.* ¶ 28. Mr. Garcia-Malene identified specific news reports about the "violence and harassment committed against scientists, researchers, and health professionals who work on combatting the spread of COVID-19." *Id.* ¶ 29 (citing news and journal articles as well as a report by the National Academies of Sciences, Engineering, and Medicine summarizing the depth and breadth of pandemic-related harassment and threats against researchers and health experts). And he explained that because of these risks, NIH and other agencies "withhold the names of agency staff and third-party researchers" so that they are not subjected to the "ongoing, unrelenting harassment" that has been faced by some of their colleagues. *Id.* ¶ 26.

Courts have found that risks like those identified by Mr. Garcia-Malene justify withholding the identities of agency personnel and others who are at risk of harassment because of their association with controversial research. For example, in *Judicial Watch, Inc. v. FDA*, the D.C. Circuit found that "agency personnel[,] private individuals[,] and companies who worked on the approval of [the abortion drug] mifepristone" had a substantial privacy interest in not having their "names and addresses" disclosed because of the risk that they might be subject to "abortion-related violence." 449 F.3d at 152–53. And in *Judicial Watch, Inc. v. HHS*, a court in this District similarly found that two NIH employees "associated with a research grant involving the use of human fetal tissue" had a privacy interest in avoiding the "potential risk of harassment, threats, or injuries" if their identifying information was disclosed. 2024 WL 3924563, at *1, *3.

Here, as in *Judicial Watch v. HHS*, the declaration provided by NIH is "both reasonably specific and reliable." *Id.* at *3. It "provides specific, concrete examples of past serious threats, levied against both NIH staff involved in Covid research" and third-party researchers involved in the same. *Id.*; *see also* Garcia-Malene Decl. ¶¶ 27–29. Accordingly, the Court is satisfied that disclosure of the information in question would compromise a substantial privacy interest.

### 3. Public Interest in Disclosure

Having found that the researchers and NIH personnel have a substantial privacy interest in their identifying information, that interest "must be weighed against whatever public interest exists in having [that information] disclosed." *Jud. Watch v. FDA*, 449 F.3d at 153. ICAN, as the requester, bears the burden of articulating a public interest that warrants invasion of the privacy interests at stake. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). It has not carried that burden.

The public interest analysis requires a court to assess "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (alteration in original) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)). Thus, "[i]nformation that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose[.]" *Beck v. DOJ*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *Reps. Comm. for Freedom of the Press*, 489 U.S. at 773).

Here, ICAN contends that knowing who submitted and withdrew the data at issue and which NIH employees approved those deletions is "key" to understanding "the origins" of the COVID pandemic and "how to prevent a public health crisis in the future." Pl.'s Reply 6. ICAN also suggests that disclosure might help the public know why the deletions at issue occurred, "whether such deletions occurred systematically or irregularly," and whether publicly funded data repositories such as the BioSample and SRA databases were "compromised." *Id*.

It is not "immediately apparent" to the Court, however, how knowing the identities of the researchers or NIH personnel would further any of the interests that ICAN has identified. *Jud. Watch v. FDA*, 449 F.3d at 153. In light of the other responsive records that NIH has produced, disclosing identifying information about these individuals would seem to have "minimal 'incremental value'" at best. *Jud. Watch v. HHS*, 2024 WL 3924563, at *3 (quoting *Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003)). This is especially true given that ICAN has provided no compelling evidence that NIH or any of the individuals whose identities might be disclosed "engaged in illegal activity." *See Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 999 (D.C. Cir. 1998) (cleaned up) (noting, in the context of FOIA Exemption 7, that where government misconduct is alleged as the justification for disclosure, the public interest is "insubstantial" unless the requester

9

puts forward "compelling evidence" of such misconduct (quoting *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992))); *cf. Wash. Post Co. v. HHS*, 690 F.2d 252, 261–65 (D.C. Cir. 1982) (requiring disclosure of grantmaking consultants' "non-federal employment" information where the possibility that consultants had "conflicts of interest" was "more than mere speculation" and supported by internal agency investigations raising similar concerns). As Dr. Jesse Bloom explained in the scientific article that prompted ICAN's FOIA's requests, "SRA deletions do not imply any malfeasance" because "there are legitimate reasons for removing sequencing runs and the SRA houses [more than] 13-million runs making it infeasible for its staff to validate the rationale for all requests."[4]

At bottom, the Court agrees that understanding the origins of the COVID pandemic and furthering efforts to prevent similar public health crises in the future are of immense public interest. There is also significant public interest in understanding whether NIH databases are compromised. But the Court is not convinced that disclosure of the identifying information at issue here would meaningfully further those interests.

On this point, the D.C. Circuit's reasoning in *Judicial Watch, Inc. v. FDA*, is particularly illustrative. There, the Circuit found that even if the public had an interest in understanding the "health risks" posed by mifepristone, the "names and addresses" of individuals associated with the drug's approval "prove[d] nothing about the nature or even the existence of the risks." 449 F.3d at 153. So too here. ICAN has not shown how disclosing identifying information for the individuals at issue will aid in understanding the origins of the COVID pandemic, advance efforts to prevent a similar public health crisis, or shed light on whether NIH's databases are compromised. Without such a showing, "the private interest in avoiding harassment or violence

---

[4] *See* Bloom, *supra* note 1, at 5220.

10

tilts the scales" against disclosure. *Id.*; *see also Jud. Watch, Inc. v. HHS*, 2024 WL 3924563, at *4 ("Any minimal public benefit of disclosing the NIH employees' names and titles does not outweigh the substantial privacy interests at stake.").

### 4. Reasonably Foreseeable Harm

Having found that the privacy interest at issue outweighs any public interest in disclosure, the Court must also find that the agency "reasonably foresees that disclosure would harm" privacy interests protected by Exemption 6. *See* 5 U.S.C. § 552(a)(8)(A)(i)(I). NIH meets this requirement.

To satisfy the "foreseeable harm requirement," an agency must "articulate both the nature of the harm from release and the link between the specified harm and specific information contained in the material withheld." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021) (cleaned up). The agency "cannot rely on mere speculative or abstract fears, or fear of embarrassment to withhold information" nor on "generalized assertions." *Id.* (cleaned up). "[A] court may find the foreseeable-harm requirement satisfied if 'the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest.'" *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 21 (D.D.C. 2021) (quoting *Reps. Comm.*, 3 F.4th at 372).

Here, as already discussed, NIH has provided a reasonably detailed and specific declaration explaining why it anticipates that disclosure would expose the individuals identified by that disclosure to harassment and threats. That declaration does not rely on "mere speculative or abstract fears" nor on "generalized assertions." *Reps. Comm.*, 3 F.4th at 369 (cleaned up). It "provides specific, concrete examples of past serious threats, levied against both NIH staff involved in Covid research" and third-party researchers involved in the same. *See Jud. Watch v. HHS*, 2024 WL 3924563, at *3; *see also* Garcia-Malene Decl. ¶¶ 27–29. NIH's purpose in withholding the identities of the individuals in question is to protect them from harassment and

threats. "The very context of that withholding highlights the foreseeable harm of the risks" to the privacy interests of those individuals. *Jud. Watch, Inc. v. HHS*, 2024 WL 3924563, at *4.

## B. Segregability

Having found that the withheld information is exempt from disclosure under Exemption 6, the Court turns to segregability. ICAN argues that even if some of the information at issue is protected by Exemption 6, NIH has not adequately shown why portions of that information are not "reasonably segregable" and still subject to disclosure. Pl.'s Mot. 18–19 (citing 5 U.S.C. § 552(b)); Pl.'s Reply 8. The Court disagrees.

"FOIA § 552(b) requires that even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed . . . unless the exempt portions are "inextricably intertwined with exempt portions." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b)). "[T]o demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," but "the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Id.* at 776 (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).

Here, NIH has provided a sufficiently detailed justification for why no further information can be reasonably segregated from the records at issue and released. Mr. Garcia-Malene's declaration explains that the redactions cover "names, contact information, and descriptive information sufficient to identify" third-party researchers who submitted and later withdrew information from the SRA database and NIH employees who work on the SRA database. Garcia-Malene Decl. ¶¶ 24–25. The supplemental declaration provided by NIH FOIA Officer Karen Lampe confirms that the only information still withheld other than names, titles, and email

addresses are "organization names and case numbers" that, if released, could identify individual researchers "as most researchers' projects are specific and generally don't overlap with others at their same institution." Lampe Decl. Ex B, ECF No. 41-3. Ms. Lampe further attests that she reviewed all the information previously reviewed by Mr. Garcia-Malene, "identified certain additional information that could be released," and determined that "no further segregability is possible." Lampe Decl. ¶¶ 6–7. In response to Mr. Garcia-Malene's declaration, ICAN contended that NIH could have produced additional information like "submitters' institutions or project identifiers" or "NIH employee titles." Pl.'s Mot. 18–19; Pl.'s Reply 8–9. ICAN has not, however, provided any response to Ms. Lampe's declaration, despite being given the opportunity to do so. And the Court, having reviewed Ms. Lampe's declaration, has no trouble imagining how releasing what information remains redacted might readily lead to identification of the individuals in question. The Court thus credits Ms. Lampe's attestation that no further information could be reasonably segregated and finds that NIH has fulfilled its "obligation to show with 'reasonable specificity' why [the withheld information] cannot be further segregated." *Johnson*, 310 F.3d at 776 (quoting *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996)).

## CONCLUSION

For all the above reasons, the Court concludes that NIH properly withheld the identifying information of third-party researchers and NIH employees under FOIA Exemption 6. Accordingly, the Court grants NIH's Motion for Summary Judgment, ECF No. 29, and denies ICAN's Motion for Summary Judgment, ECF No. 31. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date:   March 3, 2026